# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

E-Filed: 7/14/09

SHAUN DONOVAN, Secretary of the
United States Department of Housing and
Urban Development,

        Plaintiff,

        v.

PROPERTY I.D. CORP.; REALOGY
CORP. F/K/A CENDANT CORP.;
NRT/COLDWELL BANKER
RESIDENTIAL BROKERAGE CORP.;
MASON-MCDUFFIE REAL ESTATE
D/B/A PRUDENTIAL CALIFORNIA
REALTY F/K/A DUTRA REALTY
ENTERPRISES INC.; PICKFORD
REALTY LTD. D/B/A PRUDENTIAL
CALIFORNIA REALTY; PICKFORD
GOLDEN STATE MEMBER LLC;
PROPERTY I.D. of EAST BAY, LLC;
PROPERTY I.D. ASSOCIATES, LLC;
and PROPERTY I.D. GOLDEN
STATE, LLC,

        Defendants.

Civil No. 07-3372
(GHK/CWx)

**CONSENT DECREE**

     This Consent Decree is entered into between Plaintiff THE SECRETARY OF THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (hereinafter "the Secretary" or "HUD"), Defendant PROPERTY I.D. CORPORATION (including its shareholders, owners, directors, officers, and employees and hereinafter referred to as "Property I.D."), Defendant PROPERTY I.D. ASSOCIATES, LLC ("Associates"), Defendant PROPERTY I.D. GOLDEN STATE, LLC ("Golden State"), and Defendant PROPERTY I.D. OF EAST BAY, LLC ("East Bay"), through their respective undersigned counsel, for the purpose of fully resolving all issues between these parties raised by the above-captioned case.

# BACKGROUND

1.     This case involves the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607, and its implementing regulations at 24 C.F.R. Pt. 3500. Section 2607(a) of RESPA prohibits the giving or accepting of any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person. Section 2607(b) prohibits the giving or accepting of any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service involving a federally related mortgage loan other than for services actually performed.

2.     In May 2005, the Secretary, pursuant to his authority to investigate possible violations of RESPA § 2607, opened an investigation of, among others, Property I.D., the Cendant Corporation, NRT/Coldwell Banker Residential Brokerage Corporation, Pickford Realty Ltd. doing business as Prudential California Realty, Pickford Golden State Member LLC, Mason McDuffie Real Estate doing business as Prudential California Realty, Associates, Golden State, and East Bay, for potential violations of RESPA's "anti-kickback" and "anti-unearned fee" provisions related to the sale of "Natural Hazard Disclosure Statements" ("NHDS" or "NHDS reports"), reports often used to satisfy real estate settlement disclosure requirements under California law and which HUD considers to be real estate settlement services subject to RESPA.

3.     HUD's investigation proceeded and in May 2007, the Secretary initiated this lawsuit against Property I.D., Associates, Golden State, East Bay, the Cendant Corporation, NRT/Coldwell Banker Residential Brokerage Corporation, the Prudential California Realty brokerages owned by Pickford Realty Ltd. and

Mason McDuffie Real Estate, and Pickford Golden State Member LLC for alleged violations of RESPA §§ 2607(a) and (b).  The Secretary alleged that the defendants profited from these violations.  HUD sought a permanent injunction enjoining the alleged RESPA violations, and an accounting and the disgorgement of profits related to the violations alleged.

4.     On March 24, 2008, the Court denied a motion to dismiss the Complaint and held that the allegations in Plaintiff's Complaint were sufficient to state a claim for a permanent injunction and that, as a matter of law, the Court's equitable authority under 12 U.S.C. § 2607(d)(4) extended to permit the Court to order an accounting and disgorgement of profits obtained in violation of RESPA § 2607.

5.     In July 2005, in a case captioned <u>Berger v. Property I.D., et al.</u>, No. 05-5373, individual consumers brought a putative class action lawsuit against many of the same defendants for similar alleged violations of RESPA §§ 2607(a), (b).  On April 28, 2008, the <u>Berger</u> Court certified three classes of consumers: consumers who purchased reports from Associates, consumers who purchased reports from Golden State, and consumers who purchased reports from another joint venture between Property I.D. and ReMax of California and Hawaii, Inc. called Disclosure Services, LLC.

6.     On August 4, 2008, Property I.D., without admitting any wrongdoing or liability, agreed to pay $7,500,000, which will be allocated among the three <u>Berger</u> settlement classes described above and which will be available to pay Property I.D.'s NHDS report customers (hereinafter the "Class Settlement").  Each plaintiff that files a claim will be paid the amount that the plaintiff paid for an NHDS report, which in most instances will be either $99 or $114 except in one unlikely circumstance.  Specifically, if the number of claimants with valid claims

is so great that the settlement funds agreed to by Property ID and the other defendants is insufficient to pay the claims in full, each plaintiff will receive a pro rata share of the settlement funds.  To the extent that there are insufficient claims such that some of the $7,500,000 to be contributed by Property I.D. remains after the claims are paid, no part of the $7,500,000 will be returned or refunded to Property I.D.  A copy of the Class Settlement is attached as Exhibit A to this Consent Decree.

7.   Property I.D. has likewise agreed to settle this case and to agree to this Consent Order but without admitting liability or wrongdoing.

8.   Property I.D. represented that the $7,500,000 it agreed to pay under the Class Settlement exceeds the dollar amount of distributions made to it during the three years preceding the filing of the HUD matter by Associates, Golden State, and East Bay as well as by the other limited liability companies ("LLCs") formed during this time period to sell NHDS reports in which Property I.D., various real estate brokers, and other settlement service providers were involved (hereinafter "the Other LLCs").

9.   Property I.D. represented to the Secretary that it has terminated the operation of, and its participation in, Associates, Golden State, East Bay, and the Other LLCs.

10.   In an Order dated January 28, 2009, and entered on February 2, 2009, the Court approved the Class Settlement in Berger.

11.   The Secretary has concluded that the amount that Property I.D. has agreed to pay under the Class Settlement satisfies the Secretary's request in this lawsuit for an accounting and disgorgement in the above-captioned matter.

12.   The Secretary has also concluded that the Class Settlement and this Consent Decree serve the consumer protection purposes of RESPA and are

beneficial to NHDS consumers.

## CONSENT DECREE

IT IS THEREFORE NOW ORDERED, ADJUDGED and DECREED as follows:

1.  Property I.D., Associates, Golden State, and East Bay are enjoined from engaging in any activities that are alleged in the Complaint to violate RESPA and will comply with RESPA and its implementing regulations in the future with respect to NHDS reports.

2.  Property I.D. is enjoined from resuming operations of, or its participation in, Property I.D. Associates, LLC; Property I.D. Golden State, LLC; Property I.D. of East Bay, LLC; and the Other LLCs in which Property I.D. was involved during this time period.

3.  Associates, East Bay, and Golden State are enjoined from resuming operations.

4.  Property I.D., Associates, Golden State, and East Bay will consider and treat NHDS reports such as those at issue in the Complaint as real estate settlement services within the meaning of 12 U.S.C. § 2602(3) based on their understanding that HUD considers NHDS reports to be settlement services under RESPA.

5.  Should Property I.D., Associates, Golden State or East Bay enter into joint ventures or other business arrangements concerning NHDS reports, they will conduct them in accordance with RESPA, RESPA's implementing regulations, and HUD policy statements.

6.  Property I.D., Associates, Golden State, and East Bay will cooperate with HUD and the Court in this action by responding to reasonable requests for information, documents, and testimony.

1         7.    Failure by any party to enforce any provision of this Consent Decree

2    shall not be construed as a waiver by such party of any provision nor in any way

3    affect the validity of this Consent Decree or any part thereof.

4         8.    The Parties to this Consent Decree shall bear their own attorney's

5    fees and costs.

6

7    FOR THE PLAINTIFF:

8

9                                       MICHAEL F. HERTZ
                                        Acting Assistant Attorney General

10   OF COUNSEL                    THOMAS P. O'BRIEN
                                        United States Attorney

11
     JOHN P. OPITZ
12   Associate General Counsel for
     Finance and Regulatory Compliance
13   PETER S. RACE                 ARTHUR R. GOLDBERG
     Assistant General Counsel for      Assistant Branch Director
14   Program Compliance            RACHEL J. HINES
     KIRSTEN IVEY-COLSON      Senior Counsel
15   Attorney-Advisor               Federal Programs Branch, Rm. 7314
     Office of General Counsel     Civil Division
16   U.S. Department of Housing and   Mailing Address
     Urban Development             P.O. Box 883
17   451 7th Street SW             Washington, DC  20044
     Washington, DC  20410     Delivery Address
18                                      20 Massachusetts Avenue, NW
                                        Washington, DC  20001
19                                      Telephone:  (202) 514-5532
                                        Facsimile:  (202) 318-7604
20                                      Email: rachel.hines@usdoj.gov

21   Dated: February  9 , 2009        Attorneys for Plaintiff

22

23

24

25

26

27

28                             6

FOR PROPERTY I.D. CORPORATION:

_____
CARLOS SIDERMAN
PRESIDENT
Property I.D. Corporation
1001 Wilshire Boulevard
DATED: February ___, 2009   Los Angeles, CA 90017


FOR PROPERTY I.D. ASSOCIATES, LLC:

_____
CARLOS SIDERMAN
PRESIDENT OF PROPERTY I.D.
CORPORATION, MANAGING MEMBER OF
Property I.D. Associates, LLC
1001 Wilshire Boulevard
DATED: February ___, 2009   Los Angeles, CA 90017


FOR PROPERTY I.D. GOLDEN STATE, LLC:

_____
CARLOS SIDERMAN
PRESIDENT OF PROPERTY I.D.
CORPORATION, MANAGING MEMBER OF
Property I.D. GOLDEN STATE, LLC
1001 Wilshire Boulevard
DATED: February ___, 2009   Los Angeles, CA 90017

7

1  FOR PROPERTY I.D. OF EAST BAY, LLC:

2

3

4                                    CARLOS SIDERMAN
                                     PRESIDENT OF PROPERTY I.D.
5                                    CORPORATION, MANAGING MEMBER OF
                                     Property I.D. of East Bay, LLC
6                                    1001 Wilshire Boulevard
       DATED: February ___, 2009     Los Angeles, CA 90017
7

8

9

10

11

12

13

14      IT IS SO ORDERED, this _____14th_____ day of __July__, 2009.

15

16

17

18                                                           ʲURT

19

20

21

22

23

24

25

26

27

28                                        8

# EXHIBIT 1

## SETTLEMENT AGREEMENT

### Parties

1.      This Settlement Agreement ("Agreement"), dated August 4, 2008, is made by, between, and among Plaintiffs Joseph Chenier, Jr., Gil Lee, Jeanne Bakale Aldrich, Michael Attar, Ulysses J. Harvey, and Mark and Rachelle Berger, in their individual and representative capacities ("Class Representatives") on behalf of Settlement Classes, and Defendants (a) Property I.D. Corporation; Property I.D. of California, Inc.; Property I.D. California, LLC; Property I.D. Affiliates 1, LLC d/b/a Property I.D. USA; Property I.D. Associates, LLC; Disclosure Services, LLC; Property I.D. Golden State, LLC (collectively the "Property I.D. Defendants"); (b) HomeServices of California, Inc.; Pickford Realty, Ltd.; and Pickford Golden State Member, LLC (collectively, the "Pickford Defendants"); (c) ROCH Enterprises, Inc., a California Corporation, formerly known as RE/MAX of California & Hawaii, Inc. and RAS Financial Services, Inc. (collectively, the "RE/MAX Defendants"); and (d) Cendant Corporation, now known as Avis Budget Group, Inc., Coldwell Banker Residential Brokerage Company, Century 21 Real Estate Corporation, Coldwell Banker Residential Brokerage Corporation, Coldwell Banker Real Estate Corporation, Realogy Corporation, Realogy Services Group LLC, ERA Franchise Systems, Inc., NRT Incorporated, Cendant Real Estate Services Group, LLC and Cendant Operations, Inc. (collectively, the "Realogy Defendants").  The Pickford Defendants, the RE/MAX Defendants, the Realogy Defendants, and the Property I.D. Defendants are collectively referred to as the "Defendants."  The Class Representatives, the Settlement Classes, through Barry R. Himmelstein of Lieff, Cabraser, Heimann & Bernstein, LLP ("Class Counsel") and Defendants are collectively referred to as the "Settling Parties."

767358.10

## **Recitals**

2.      The Class Representatives initiated a class action lawsuit against
Defendants for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601
*et seq.* ("RESPA"), breach of fiduciary duty and violation of the California Business and
Professions Code, Section 17200 *et seq.* (the "UCL"), presently pending as *Mark and*
*Rachelle Berger et al. v. Property I.D. Corp.*, et al., Case No. CV-5373-GHK (CWx)
(the "Class Action Lawsuit") in the United States District Court for the Central District of
California, Western Division (the "Court").

3.      On April 28, 2008, the Court certified this case as a class action against
the Pickford Defendants, the RE/MAX Defendants, and the Realogy Defendants pursuant
to Rule 23 of the Federal Rules of Civil Procedure pursuant to the following three
classes:

> All persons who purchased Property I.D. Natural Hazard Disclosure
> Reports, in a transaction involving a federally related mortgage loan, and
> not primarily for business, commercial, or agricultural purposes, ordered
> by an agent or broker of any Pickford Defendant(s) [defined as
> HomeServices of California, Inc., Pickford Realty, Ltd., and Property I.D.
> Golden State, LLC] or their subsidiaries or affiliates, including their
> owned and operated brokerages, affiliates, or franchisees, during the
> period when Property I.D. Golden State, LLC was in operation.  Excluded
> from the class are: 1) all Defendants, any entity in which they have a
> controlling interest, and their legal representatives, officers, directors,
> assigns and successors; and b) the judge to whom this case is assigned and
> members of the judge's immediate family.

> All persons who purchased Property I.D. Natural Hazard Disclosure
> Reports, in a transaction involving a federally related mortgage loan, and
> not primarily for business, commercial, or agricultural purposes, ordered
> by an agent or broker of any RE/MAX Defendant(s) [defined as RE/MAX
> of California and Hawaii, Inc., RAS Financial Services, Inc., and
> Disclosure Services, LLC] or their subsidiaries or affiliates, including their
> owned and operated brokerages, affiliates, or franchisees, during the
> period when Disclosure Services, LLC was in operation.  Excluded from
> the class are: 1) all Defendants, any entity in which they have a controlling

- 2 -

interest, and their legal representatives, officers, directors, assigns and successors; and b) the judge to whom this case is assigned and members of the judge's immediate family.

All persons who purchased Property I.D. Natural Hazard Disclosure Reports, in a transaction involving a federally related mortgage loan, and not primarily for business, commercial, or agricultural purposes, ordered by an agent or broker of any Realogy Defendant(s) [defined as Cendant Corporation, Coldwell Banker Residential Brokerage Co., Century 21 Real Estate Corporation, Coldwell Banker Residential Brokerage Corp., Coldwell Banker Real Estate Corp., Realogy Corp., Realogy Services Group, LLC, ERA Franchise Systems, Inc., NRT Inc., Cendant Real Estate Services Group, LLC and Cendant Operations, Inc.] or their subsidiaries or affiliates, including their owned and operated brokerages, affiliates, or franchisees, during the period when either Affiliates [defined as Property I.D. Affiliates I, LLC] or Associates [defined as Property I.D. Associates, LLC] was in operation. Excluded from the class are: 1) all Defendants, any entity in which they have a controlling interest, and their legal representatives, officers, directors, assigns and successors; and b) the judge to whom this case is assigned and members of the judge's immediate family.

4.     The Court appointed Jeanne Bakale Aldrich as the class representative for the certified class against the Pickford Defendants, Michael Attar as the class representative for the certified class against the RE/MAX Defendants, Mark and Rachelle Berger as class representatives against the Realogy Defendants, and Lieff, Cabraser, Heimann & Bernstein, LLP as class counsel.

5.     The Class Representatives contend in the Class Action Lawsuit that Defendants formed affiliated business arrangements ("ABAs") as permitted under RESPA, but that the ABAs constituted "shams" under RESPA and HUD's Policy Statement 1996-2 Guidelines. The Class Representatives also contend in the Class Action Lawsuit that Defendants violated RESPA and state law by giving and receiving payments in exchange for referrals to the ABAs of orders of Natural Hazard Disclosure reports ("Property I.D. NHD Reports"), and by failing to disclose the alleged "sham"

- 3 -

nature of the ABAs to persons who ordered or purchased Property I.D. NHD Reports as a result of the referral.

6. The Class Representatives and the Settlement Classes, through Class Counsel, have engaged in substantial investigation, examination and discovery to evaluate the merits of the Class Representatives' and Settlement Classes' claims and the Defendants' defenses. Class Counsel has obtained substantial information and has thoroughly analyzed the factual and legal issues surrounding the claims and defenses in the Class Action Lawsuit.

7. Defendants expressly deny any wrongdoing, as alleged in the Class Action Lawsuit or otherwise, and do not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged in the Class Action Lawsuit. Nonetheless, Defendants consider it desirable for the Class Action Lawsuit to be settled on the terms set forth in this Agreement because (a) it will avoid further disruption of the management and operation of Defendants' business due to the pendency and defense of the Class Action Lawsuit, and (b) it will avoid the substantial expense, burdens, and uncertainties associated with continued litigation of the Class Action Lawsuit.

8. Class Counsel and counsel for Defendants have conducted lengthy and detailed settlement negotiations under the auspices of an independent mediator. As a result of these negotiations, the Class Representatives and the Settlement Classes, through Class Counsel, have agreed to settle the Class Action Lawsuit against Defendants pursuant to the provisions of this Agreement after considering such factors as (a) the substantial benefits to the Settlement Classes under the terms of this Agreement, (b) the

- 4 -

attendant costs, risks, and uncertainty of litigation and (c) the desirability of consummating this Agreement promptly, in order to provide relief to the Settlement Classes.

9.      The Settling Parties did not discuss the Attorneys' Fees Award that may be applied for by Class Counsel until after reaching an agreement in principle with respect to the total settlement consideration made available to the Settlement Classes.

10.      The Class Representatives and Class Counsel believe that the terms of this Agreement are fair, reasonable, and adequate, that this Agreement provides substantial benefits to the Settlement Classes, and that settlement of the Class Action Lawsuit against Defendants on the terms set forth in this Agreement is in the best interests of the Settlement Classes.

11.      The Class Representatives, the Settlement Classes, through Class Counsel, and Defendants believe that it is in their respective best interests to settle and compromise all issues and claims that have been brought, or that could have been brought, in the Class Action Lawsuit by or on behalf of members of the Settlement Classes (who do not exclude themselves from the Settlement Classes pursuant to the terms of this Agreement) against the Defendants arising out of the conduct alleged, and have agreed to settle the Class Action Lawsuit on the terms set forth in this Agreement.  Accordingly, the purpose of this Agreement, once approved by the Court, is to make a full, complete, and final resolution of all claims that were asserted or that could have been asserted against Defendants by the Class Representatives or the Settlement Classes in the Lawsuit arising out of the conduct alleged.

12.      The Settling Parties intend to seek Court approval of the settlement of the

- 5 -

Class Action Lawsuit as set forth in this Agreement, and upon Court approval, to seek a final order and judgment from the Court dismissing with prejudice the claims of the Class Representatives and the Settlement Classes against Defendants.

### Terms And Conditions

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual promises set forth below, and each act done by the Settling Parties pursuant to this Agreement, the Settling Parties agree as follows:

### A.    Settlement Class Certification.

13.    The Settling Parties agree that the Court should certify the following classes solely for the purposes of implementing the terms of this Agreement:

> All persons who purchased Property I.D. Natural Hazard Disclosure Reports, in a transaction involving a federally related mortgage loan, and not primarily for business, commercial, or agricultural purposes, ordered by an agent or broker of any Pickford Defendant(s) [defined as HomeServices of California, Inc., Pickford Realty, Ltd., and Property I.D. Golden State, LLC] or their subsidiaries or affiliates, including their owned and operated brokerages, affiliates, or franchisees, during the period July 14, 2000 through August 16, 2005.  Excluded from the class are: 1) all Defendants, any entity in which they have a controlling interest, and their legal representatives, officers, directors, assigns and successors; and b) the judge to whom this case is assigned and members of the judge's immediate family.

This settlement class is hereinafter referred to as the "Pickford Settlement Class," and members of the Pickford Settlement Class are hereinafter referred to as "Pickford Settlement Class Members."

> All persons who purchased Property I.D. Natural Hazard Disclosure Reports, in a transaction involving a federally related mortgage loan, and not primarily for business, commercial, or agricultural purposes, ordered by an agent or broker of any RE/MAX Defendant(s) [defined as RE/MAX of California and Hawaii, Inc., RAS Financial Services, Inc., and Disclosure Services, LLC] or their subsidiaries or affiliates, including their

- 6 -

owned and operated brokerages, affiliates, or franchisees, during the period August 23, 2000 through February 28, 2003. Excluded from the class are: 1) all Defendants, any entity in which they have a controlling interest, and their legal representatives, officers, directors, assigns and successors; and b) the judge to whom this case is assigned and members of the judge's immediate family.

This settlement class is hereinafter referred to as the "RE/MAX Settlement Class," and members of the RE/MAX Settlement Class are hereinafter referred to as "RE/MAX Settlement Class Members."

All persons who purchased Property I.D. Natural Hazard Disclosure Reports, in a transaction involving a federally related mortgage loan, and not primarily for business, commercial, or agricultural purposes, ordered by an agent or broker of any Realogy Defendant(s) [defined as Cendant Corporation, Coldwell Banker Residential Brokerage Co., Century 21 Real Estate Corporation, Coldwell Banker Residential Brokerage Corp., Coldwell Banker Real Estate Corp., Realogy Corp., Realogy Services Group, LLC, ERA Franchise Systems, Inc., NRT Inc., Cendant Real Estate Services Group, LLC and Cendant Operations, Inc.] or their subsidiaries or affiliates, including their owned and operated brokerages, affiliates, or franchises, during the period July 31, 1996 through June 30, 2006. Excluded from the class are: 1) all Defendants, any entity in which they have a controlling interest, and their legal representatives, officers, directors, assigns and successors; and b) the judge to whom this case is assigned and members of the judge's immediate family.

This settlement class is hereinafter referred to as the "Realogy Settlement Class," and members of the Realogy Settlement Class are hereinafter referred to as "Realogy Settlement Class Members." The Pickford Settlement Class, RE/MAX Settlement Class, and Realogy Settlement Class are hereinafter referred to collectively as the "Settlement Classes." As a matter of compromise, and solely for the purpose of facilitating the settlement set forth in this Agreement, the Settling Parties agree that a transaction "involves a federally related mortgage loan" if and only if a mortgage loan was recorded in connection with the sale of the subject property.

14.     Subject to Court approval, Ulysses J. Harvey will be substituted for

- 7 -

Michael Attar as Class Representative for the RE/MAX Settlement Class.

15.    The Class Representatives, the Settlement Classes, through Class Counsel, and Defendants agree, solely for the purposes of facilitating this Agreement, that the Settlement Classes comply with the terms of Federal Rule of Civil Procedure 23(a) and 23(b)(3), and that the Court should certify the Settlement Classes solely for the purposes of implementing the terms of this Agreement.  The Class Representatives and Class Counsel agree and acknowledge that Defendants do not consent to the certification of any class contemplated by the Class Action Lawsuit or as set forth in the Court's April 28, 2008 Order in the event that this Agreement is not approved or consummated for any reason.  By entering into this Agreement, Defendants do not waive their rights to appeal, oppose, challenge, or contest the maintenance of any lawsuit against them as a class action or to oppose certification, or seek reconsideration or decertification, of any class. If this Agreement is terminated for any reason, or is disapproved by the Court or by any appellate court, (1) this Agreement, including the fact that it was entered into, any papers or filings relating to this Agreement, and any orders entered by the Court approving this Agreement or respecting certification of the Settlement Classes contemplated herein, shall not be offered, received or construed as an admission, finding or evidence for any purpose, including the appropriateness of class certification, and (2) the Court's April 28, 2008 Order respecting class certification shall apply as if the Agreement had not been made, subject to any motions for reconsideration, clarification, or appeals filed or to be filed by Defendants relating to the Court's April 28, 2008 Order.

**B.    Consideration.**

16.    In consideration for the settlements with the Settlement Classes, the total

- 8 -

consideration made available to the Settlement Classes (the "Total Consideration") shall be as follows: Realogy Settlement Class, $33 million; Pickford Settlement Class, $5,438,000; and RE/MAX Settlement Class, $903,474, as more particularly set forth herein. The distribution of the Total Consideration shall be subject to the terms set forth in this Agreement.

17. No later than ten business days after the Preliminary Approval Order is entered, Defendants shall deposit the following amounts into an interest-bearing account held by Citibank, N.A. (the "Settlement Account") via wire transfer (except that the Property I.D. Defendants may, in the alternative, deliver to Class Counsel no later than ten business days after the Preliminary Approval Order is entered a check made payable to "Property I.D. Settlement Fund" in lieu of a wire transfer): (a) the Property I.D. Defendants shall deposit Seven Million Five Hundred Thousand Dollars ($7,500,000), of which Six Million Dollars ($6,000,000) shall be allocated to the settlement with the Realogy Settlement Class, One Million Ninety Five Thousand Dollars ($1,095,000) shall be allocated to the settlement with the Pickford Settlement Class, and Four Hundred Five Thousand Dollars ($405,000) shall be allocated to the settlement with the RE/MAX Settlement Class; (b) the Realogy Defendants shall deposit Four Million Dollars ($4 million), which shall be allocated to the Realogy Settlement Class; (c) the Pickford Defendants shall deposit One Million Fifty Thousand Dollars ($1,050,000), which shall be allocated to the Pickford Settlement Class; and (d) the RE/MAX Defendants shall deposit Four Hundred Ninety Eight Thousand Four Hundred Seventy Four Dollars ($498,474), which shall be allocated to the RE/MAX Settlement Class (collectively, the "Initial Deposits"). Thereafter, the distribution of the Initial Deposits shall be subject to

the terms set forth in this Agreement.

18.    As soon as practicable following the expiration of the Claims Deadline and the Settlement Administrator's determination of the validity of the timely filed Claims (including consideration of any documentation provided by Class Members in response to Deficiency Notices), the Settlement Administrator will provide an accounting as to each Settlement Class to counsel for the Settling Parties (the "Accounting"), showing:  (1) the total number of valid Claims; (2) the total amount of Claim Payments represented by the valid Claims; and (3) the total number of invalid Claims.  The Accounting shall also contain:  (1) the amount of Class Administration Expenses incurred and paid to date (the "Past Expenses"), as well as (2) the Settlement Administrator's estimate of the amount of additional Class Administration Expenses to be incurred in completing the settlement administration process (including any current, unbilled charges, and including, without limitation, the cost of printing and mailing checks and associated correspondence to the Settlement Classes) (the "Estimated Final Expenses").

19.    Not later than thirty (30) days following receipt of the Accounting, the following Defendants shall deposit the following additional amounts by wire transfer into the Settlement Account:   (1) the Pickford Defendants shall deposit the lesser of (a) Three Million Two Hundred Ninety Three Thousand Dollars ($3,293,000), or (b) the sum of (i) the total dollar amount of timely and valid Claims submitted by Pickford Settlement Class Members, (ii) the amount of Past Expenses allocated to the Pickford Settlement Class, (iii) the amount of Estimated Final Expenses allocated to the Pickford Settlement Class, and (iv) the amount of any Attorneys' Fee Award (including any Incentive Awards) allocated to the Pickford Settlement Class, minus (v) the $2,145,000 Initial

- 10 -

Deposits allocated to the Pickford Settlement Class, and any interest accrued thereon; and (2) the Realogy Defendants shall deposit the lesser of (a) $23 million, or (b) the sum of (i) the total dollar amount of timely and valid Claims submitted by Realogy Settlement Class Members, (ii) the amount of Past Expenses allocated to the Realogy Settlement Class, (iii) the amount of Estimated Final Expenses allocated to the Realogy Settlement Class, and (iv) the amount of any Attorneys' Fee Award (including any Incentive Awards) allocated to the Realogy Settlement Class, minus (v) the $10 million Initial Deposits allocated to the Realogy Settlement Class, and any interest accrued thereon.  No additional amount shall be deposited by or due from the RE/MAX Defendants.

20.     As soon as practicable following completion of the claims administration process (including the expiration of the time period for cashing checks mailed to Settlement Class Members), the Settlement Administrator shall provide counsel for the Settling Parties with a Final Accounting, showing, as to each Settlement Class, (a) the amount of Claims paid, (b) the total Class Administration Expenses incurred, and (c) the amount of funds remaining in the Settlement Account, after deduction of any unpaid Class Administration Expenses and the unpaid portion of any Attorneys' Fee Award (including any Incentive Awards) (the "Remaining Funds").  The Settlement Administrator shall promptly return any Remaining Funds in the Settlement Account as to the Realogy Settlement Class to the Realogy Defendants, and any Remaining Funds in the Settlement Account as to the Pickford Settlement Class to the Pickford Defendants. Any Remaining Funds as to the RE/MAX Settlement Class shall not be returned to the RE/MAX Defendants, and shall be disposed of in such manner as the Court shall direct.

21.     The Settling Parties agree that the liability of each of the Defendants to the

- 11 -

Settlement Classes under this Agreement, including payment of the Attorneys' Fee
Award relating to the Settlement Classes and Class Administration Expenses, shall not
exceed the amounts set forth in Paragraphs 16 through 20 of this Agreement. Under no
circumstances shall Defendants be obligated or otherwise liable to the Settlement Classes
or Class Counsel under this Agreement for any sums in addition to the said amounts.

**C.**     **Preliminary Approval and Notice to the Settlement Classes.**

22.     The Class Representatives shall present this Agreement to the Court along
with a Motion for Preliminary Approval of Class Settlement. The Class Representatives,
the Settlement Classes, by Class Counsel, and Defendants shall take all additional
appropriate steps to obtain an order from the Court (the "Preliminary Approval Order"),
in a form to be agreed upon by the Settling Parties: (a) preliminarily approving this
Agreement and finding that this Agreement is sufficiently fair, reasonable and adequate
to allow notice to be disseminated to members of the Settlement Classes; (b) substituting
Ulysses Harvey for Michael Attar as the representative of the RE/MAX Settlement Class;
(c) approving of notice to members of the Settlement Classes of the preliminary approval
of this Agreement, the opportunity to opt out, the date of the Fairness Hearing, and the
procedure for objecting to the terms of this Agreement (the "Preliminary Class Settlement
Notice") and a shorter publication notice (the "Publication Notice"); (d) directing the
publication of the Publication Notice and mailing of the Preliminary Class Settlement
Notice pursuant to the terms of this Agreement; and (e) scheduling a fairness hearing on
final approval of this Agreement (the "Fairness Hearing"). The Settling Parties shall
submit to the Court with the motion for Preliminary Approval of Class Settlement a
proposed Preliminary Approval Order, a proposed Preliminary Class Settlement Notice, a

- 12 -

proposed Publication Notice, and a proposed plan for the publication of the Publication Notice and mailing of the Preliminary Class Settlement Notice (the "Notice Plan").

23.     Prior to, or contemporaneously with the filing of the Motion for Preliminary Approval of Class Settlement, in conformity with the Court's April 28, 2008 Order, the Class Representatives shall file stipulations and proposed orders dismissing the Class Action Lawsuit (with a mutual waiver of attorneys' fees and costs) as against defendants Mason-McDuffie Real Estate Franchise Corporation d/b/a Prudential California Realty; Property I.D. of East Bay, LLC; Silvercrest Realty, Inc. d/b/a Prudential California Realty; Silver Oak Real Estate Of Los Angeles County d/b/a Prudential California Realty; Silver Oak Real Estate Of Riverside County d/b/a Prudential California Realty; Silver Oak Real Estate Of Orange County d/b/a Prudential California Realty; and Silver Oak Real Estate Of San Bernardino County d/b/a Prudential California Realty.

24.     Prior to the publication of the Publication Notice and the mailing of the Preliminary Class Settlement Notice, the Settlement Administrator shall have established a toll-free telephone number and website (the "Settlement Website"), both of which shall be prominently displayed in the Publication Notice and Preliminary Class Settlement Notice, which Settlement Class Members may call or visit to request or download a Publication Claim Form and Preliminary Class Settlement Notice.

25.     To facilitate the mailing of the Preliminary Class Settlement Notice, within ten (10) days following the execution of this Agreement, the Property I.D. Defendants shall provide Class Counsel with an Excel spreadsheet (or other agreed upon format) for each of the Settlement Classes, containing, at a minimum, the database fields

- 13 -

contained in the attached Exhibit A.  The spreadsheet for the Realogy Settlement Class shall contain only records of sales previously allocated to Property I.D. of California, Inc.; Property I.D. California, LLC; Property I.D. Affiliates 1, LLC d/b/a Property I.D. USA; or Property I.D. Associates, LLC.   The spreadsheet for the Pickford Settlement Class shall contain only records of sales previously allocated to Property I.D. Golden State, LLC.  The spreadsheet for the RE/MAX Settlement Class shall contain only records of sales previously allocated to Disclosure Services, LLC.  Class Counsel shall provide the spreadsheets to First American CoreLogic, Inc. ("First American") (provided that First American first agrees in writing to treat this information as confidential and not to use it for competitive purposes) which shall endeavor to append to each record (1) the name(s) of the seller(s) of the identified property, (2) the date of the closing of the sale or transfer of the property by the seller(s), and (3) the name of the lender on any first mortgage loan made to the buyer of the subject property in connection with the transaction.  With the names and dates so appended, Class Counsel shall provide the spreadsheets to The Garden City Group, Inc. (the "Settlement Administrator").  As to those records from First American that contain the name of a lender as set forth in subpart (3) of the preceding sentence, the Settlement Administrator shall endeavor to determine a current mailing address for each seller whose name has been provided.  The names and current addresses so derived shall constitute the "Mailing Lists" (including the "Pickford Mailing List," the "RE/MAX Mailing List," and the "Realogy Mailing List").  If the First American database does not contain the name of a lender on a first mortgage loan made to the buyer of the subject property in connection with the transaction, such seller shall not be included in the Mailings Lists.  The Settlement Administrator shall mail the

- 14 -

Preliminary Class Settlement Notice to all persons appearing on the Mailing Lists, at such time and in such manner as shall be directed by the Court in the Preliminary Approval Order.

26.     No later than three days before the Fairness Hearing, the Settlement Administrator shall file with the Court a declaration confirming the publication of the Publication Notice and the mailing of the Preliminary Class Settlement Notice, in conformity with the requirements of the Preliminary Approval Order.

**D.**     **Objections to this Agreement and Requests for Exclusion.**

27.     Subject to Court approval, the Preliminary Approval Order shall provide that:  (a) for a period of 30 days after the date of the final publication of the Publication Notice (or 35 days after the date of mailing of the Preliminary Class Settlement Notice to the Mailing Lists, if later), any member of the Settlement Classes shall have the right to object to the fairness of this Agreement in the manner set forth in the Preliminary Class Settlement Notice, which shall include filing a written objection and supporting papers with the Court and serving the written objection and supporting papers on counsel for Plaintiffs and on counsel for the Realogy Defendants (who shall promptly transmit copies of any such papers received to counsel for the Pickford Defendants, counsel for the RE/MAX Defendants, and counsel for the Property I.D. Defendants); (b) each objecting Settlement Class Member must state all grounds for such objections and whether the objector intends to appear at the Fairness Hearing, in person or by counsel, for the purpose of presenting objections; (c) the objections that a Settlement Class Member may present at the Fairness Hearing shall be limited to those set forth in that Settlement Class Member's written objection; and (d) any Settlement Class Member who fails to make an

- 15 -

objection in the manner provided shall be deemed to have waived all objections and shall be foreclosed from making any objections to this Agreement (at the Fairness Hearing, by appeal, or otherwise) and shall be bound by all proceedings, orders and judgments in this Class Action Lawsuit relating to the approval and implementation of this Agreement.

28.     If this Agreement is approved by the Court and the Class Action Lawsuit is dismissed with prejudice against Defendants, each member of the Settlement Classes shall be bound thereby and shall have only the relief provided in this Agreement. Said dismissal will bar all claims that were or could have been asserted against Defendants in the Class Action Lawsuit which arise out of, are based on, or relate to any of the allegations of or acts described in Class Action Lawsuit and those claims covered by the Settlement Classes' Release.

29.     Within 30 days after the final publication of the Publication Notice (or 35 days after the date of mailing of the Preliminary Class Settlement Notice to the Mailing Lists, if later), or such other time period as the Court may direct, each member of the Settlement Classes shall have the right to request exclusion from the Settlement Classes by written mailed notice in the manner set forth in the Preliminary Class Settlement Notice, which shall include the requirement that the Settlement Class Member identify the Settlement Class(es) of which they are a member and from which they are requesting exclusion. Members of the Settlement Classes who submit a timely request for exclusion will not be bound by the terms of this Agreement, will not be entitled to participate in the Settlement Classes or receive the settlement considerations described in this Agreement and will not be bound by the Settlement Classes' Release.

30.     A list of the exclusions requested by Settlement Class Members, broken

- 16 -

down by Settlement Class, shall be filed with the Court by Class Counsel and served on

counsel for the Defendants not later than ten (10) business days prior to the Fairness

Hearing (the "Exclusion List"). In the event that this Agreement is not approved by the

Court or by any appellate court, all requests for exclusion shall be deemed rescinded.

The members of the Settlement Classes who do not effectively and timely request

exclusion are, with respect to each of the Settlement Classes, collectively referred to as

the "Final Settlement Class Members" or the "Final Settlement Class."

       31. Should the number of persons or entities who have timely excluded

themselves from the Pickford Settlement Class exceed the threshold set forth in Exhibit B

(which is confidential and shall not be filed with Court, or, if required to be filed, shall be

filed under seal), the Pickford Defendants or the Property I.D. Defendants may, within

five (5) business days following receipt of the Exclusion List, terminate this Agreement

as provided in Paragraph 65. Should the number of persons or entities who have timely

excluded themselves from the RE/MAX Settlement Class exceed the threshold set forth

in Exhibit B, the RE/MAX Defendants or the Property I.D. Defendants may, within five

(5) business days following receipt of the Exclusion List, terminate this Agreement as

provided in Paragraph 65. Should the number of persons or entities who have timely

excluded themselves from the Realogy Settlement Class exceed the threshold set forth in

Exhibit B, the Realogy Defendants or the Property I.D. Defendants may, within five (5)

business days following receipt of the Exclusion List, terminate this Agreement as

provided in Paragraph 65.

       32. All Settlement Class Members who do not submit a timely request for

exclusion shall be bound by all subsequent proceedings, orders, dismissals and judgments

in this Class Action Lawsuit, including but not limited to the terms of this Agreement, if approved by the Court, and any amendments to this Agreement approved by the Court, even if he or she has pending, or subsequently initiates, litigation against Defendants that is within the scope of the Settlement Classes' Release. If this settlement is approved by the Court and the Class Action Lawsuit is dismissed with prejudice against Defendants, each member of the Settlement Classes shall be bound thereby and shall have only the relief provided in this Agreement. Said dismissal will bar all claims that were or could have been asserted in the Class Action Lawsuit against Defendants which arise out any of the allegations of or acts described in the Class Action Lawsuit and those claims released in the Settlement Classes' Release.

E.      **Final Court Approval of this Agreement.**

33.      Class Counsel and counsel for Defendants shall use their best efforts to obtain a final judgment from the Court approving this Agreement (the "Final Judgment") after the Fairness Hearing. The Settling Parties shall tender to the Court a proposed Final Judgment in a form to be agreed upon by the Settling Parties:

    a.      determining that Defendants, the Class Representatives, and the members of the Final Settlement Classes have submitted to the jurisdiction of the Court for purposes of the proposed settlement, and that the Court has subject matter jurisdiction to approve the Agreement;

    b.      finding that the Settlement Classes satisfy the requirements for a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

    c.      finding that the notice given pursuant to this Agreement satisfies the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and the requirements of due process;

    d.      finding that this Agreement and its terms constitute a fair, reasonable and adequate settlement as to the Settlement Classes,

- 18 -

and directing its consummation pursuant to the terms of this Agreement;

e.  finding that each Final Settlement Class Member is bound by the terms of this Agreement including the Settlement Classes' Release set forth in Paragraph 56 hereof;

f.  dismissing with prejudice as to Defendants the Class Action Lawsuit, without attorneys' fees or costs except as provided for herein; and

g.  providing that the Court shall retain jurisdiction to enforce this Agreement until performance in full of its terms, including the administration and distribution of the funds deposited into the Settlement Account.

34.  The Settling Parties and their counsel shall take such steps as may be necessary or as may be requested by the Court, and otherwise shall use their best efforts to obtain the Final Judgment.

35.  In the event that the Court does not approve this Agreement, the Settling Parties shall immediately negotiate in good faith to attempt to agree upon a revised class settlement agreement which, if reached, will then be presented to the Court for approval.

36.  The effective date of the settlement under this Agreement (the "Effective Date") shall be the later of the following: (a) the date 30 days after the Final Judgment, if no appeal is taken from the Final Judgment, or (b) the date of the final conclusion of any appeal of the Final Judgment, if the Final Judgment is affirmed on appeal.

**F.  Claims.**

37.  Together with the Preliminary Class Settlement Notice, the Settlement Administrator shall send claim forms, substantially in the form set forth in Exhibit C to this Agreement (the "Mailed Claim Form"), by U.S. Mail to Settlement Class Members at the addresses shown on the Mailing Lists, and shall send claim forms, substantially in the form set forth in Exhibit D to this Agreement (the "Publication Claim Form," and

- 19 -

together with the Mailed Claim Form, the "Claim Form" or "Claim Forms"), to any other persons or entities who have requested the Preliminary Class Settlement Notice. The Claim Forms shall, *inter alia*, provide information concerning the procedures for filing claims and the Claims Deadline (defined below). The Settlement Administrator shall continue to send the Publication Claim Form, on a rolling basis, to any persons or entities who request it, provided they did not effectively and timely request exclusion, until the expiration of the Claims Deadline.

38.     To be timely returned to the Settlement Administrator, a Claim Form must be postmarked, or actually received by the Claims Administrator, no later than 45 days after the date of the Fairness Hearing, or such other deadline as may be ordered by the Court (the "Claims Deadline").

39.     In order to be valid and properly executed, the Claim Form must be signed by a Final Settlement Class Member under penalty of perjury, must be determined as valid by the Settlement Administrator as set forth herein, and must contain all of the following information:

       a.     The first and last name and current address of the Final Settlement Class Member;

       b.     The street address, city, state, and zip code of the property in relation to which the Final Settlement Class Member claims a recovery under this Agreement;

       c.     The name of the real estate company (Coldwell Banker, Prudential, RE/MAX, Century 21, or ERA) representing the Final Settlement Class Member in connection with the sale or transfer of the real property identified in the Claim Form, and the name of the city in which the office representing the Settlement Class Member was located;

       d.     The year in which the closing of the sale or transfer of the real property identified in the Claim Form occurred; and

- 20 -

e. A series of check boxes inquiring whether the real property identified in the Claim Form was the Final Settlement Class member's principal residence, a vacation home, rental property (and, if so, the number of units and whether the Final Settlement Class Member lived in one of them), commercial property, agricultural property, vacant land, or more than 25 acres.

The information required by Paragraphs (a) and (b) shall be pre-printed on the Mailed Claim Form.

40. As to Final Settlement Class Members who do not appear on the Mailing Lists, the Publication Claim Form must also contain an affirmation in response to a "Yes" or "No" question that the Final Settlement Class Member's records reflect that the Final Settlement Class Member purchased a Property I.D. NHD Report in connection with the sale or transfer of the real property identified in the Publication Claim Form. As to Final Settlement Class Members who do not appear on the Mailing Lists, the Publication Claim Form must also contain the name of one or more of the real estate agent(s) or broker(s) who represented the Final Settlement Class Member in the sale of the property as to which the Final Settlement Class Member claims a recovery under this agreement, and, as to the Pickford Settlement Class, the name of the street on which the real estate office with which the agent(s) or broker(s) were affiliated was located.

41. The Claim Forms shall also offer the Final Settlement Class Member an opportunity to provide the Settlement Administrator with an email address, to facilitate any necessary communication with respect to the Final Settlement Class Member's claim. In the event that a Final Settlement Class Member claims a recovery under this Agreement for more than one property, the Final Settlement Class Member must submit a separate timely and fully-executed Claim Form for each property.

42. The Settlement Website shall permit Final Settlement Class Members to

- 21 -

enter the required information into a printable Publication Claim Form, which they may sign and mail to the Settlement Administrator.

43.     If the sale of and payment for a Property I.D. NHD report on the property that is the subject of a Publication Claim Form does not appear in the Excel spreadsheets provided to Class Counsel pursuant to Paragraph 25, the Settlement Administrator will send the Final Settlement Class Member a letter or email message (if the Final Settlement Class Member has provided an email address) notifying the Final Settlement Class Member of that fact (a "Deficiency Notice"), and giving the Final Settlement Class Member thirty (30) days to provide the Settlement Administrator with valid documentation showing (1) the purchase of and payment by the Final Settlement Class Member for a Property I.D. NHD Report on the subject property, and (2) the name of the real estate company representing the Final Settlement Class Member in connection with the sale or transfer of the real property identified in the Publication Claim Form (and, as to the Pickford Settlement Class, the name of the city in which the office representing the Final Settlement Class Member was located, and the name of the street on which the office was located).  Acceptable documentation of the foregoing shall include, without limitation, (a) a HUD-1 Settlement Statement related to the subject property showing any payment by the Settlement Class Member out of escrow to "Property I.D.," any name including "Property I.D.," "Property ID," "PID," "P.I.D.," or "Disclosure Services;" (b) any list of closing costs related to the subject property prepared by the escrow holder in connection with the subject transaction showing any payment by the Settlement Class Member out of escrow to "Property I.D.," any name including "Property I.D.," "Property ID," "PID," "P.I.D.," or "Disclosure Services;" (c) any check made payable to "Property

- 22 -

I.D.," or any name including "Property I.D.," "Property ID," "PID," "P.I.D.," or "Disclosure Services;" or (d) any receipt showing payment for a Property I.D. NHD Report related to the subject property, or, if the receipt does not identify the property to which the report relates, dated within 6 months of the subject transaction. The Publication Claim Form mailed to Final Settlement Class Members not appearing on the Mailing Lists shall also invite Final Settlement Class Members to submit any such documentation with the Publication Claim Form, but will inform Final Settlement Class Members that they will receive a Deficiency Notice and an opportunity to provide such documentation, if required. The Settlement Website shall contain exemplars of valid documentation.

44.     If a Publication Claim Form is submitted by a person who does not appear on the Mailing Lists, the information submitted by the Settlement Class Member concerning the transaction shall be transmitted to First American, who shall endeavor to determine with respect to the subject transaction whether a first mortgage loan to the buyer was recorded in connection with the transaction. If no such loan was recorded, the Claim shall be denied as invalid. If such a loan was recorded, and if the other requirements for a valid Claim set forth in this Agreement have been satisfied, the Claim shall be deemed valid.

45.     If a Claim Form is submitted by any person other than the Final Settlement Class Member himself, herself, or itself, the Claim Form must be accompanied by appropriate documentation establishing power of attorney, trusteeship, or other status that would permit the person executing the Claim Form to do so on behalf of the Final Settlement Class Member, except as provided herein. The lack of such

- 23 -

documentation with the submitted Claim Form shall render the Claim Form invalid. Notwithstanding the foregoing, such documentation shall not be required where (a) the Settlement Class Member is a trust, and (b) the name of the trust contains the surname of the person submitting the Claim Form, in which case it shall be sufficient for the person submitting the Claim Form to certify that they are authorized to act on behalf of the Final Settlement Class Member.  The right to submit a Claim Form and to receive the Claim Payment is not subject to assignment by a Final Settlement Class Member.  Claim Forms submitted by third parties such as lessees, subrogees, assignees, lienholders, or claims aggregators shall not be valid.

46.     If a Settlement Class Member does not submit a valid request for exclusion from the Settlement Classes and does not submit a valid and timely Claim Form, (a) Defendants shall not be obligated to undertake any other action with respect to that Settlement Class Member under this Agreement, (b) that Settlement Class Member shall have no further rights to receive payment under this Agreement, and (c) that Settlement Class Member is bound by all terms of this Agreement, including the Settlement Classes' Release.

47.     The Settlement Administrator shall determine the validity of each timely Claim Form.  Each Claim Form that fails to comply with the terms of this Agreement shall be rejected by the Settlement Administrator as invalid, except that Claims shall not be rejected as invalid solely because the Final Settlement Class Member provided an incorrect year of sale, or for immaterial variances in names or addresses.  The Settlement Administrator's determination as to the validity of each Claim shall be final and non-appealable by the Settling Parties, provided that the Settlement Administrator acts in

conformity with its obligations under the Agreement.  The Settling Parties shall submit to the Court for resolution any dispute over whether the Settlement Administrator has acted in conformity with its obligations under the Agreement.  The intent of this provision is to permit the Court to resolve disputes concerning practices and procedures of general applicability implemented by the Settlement Administrator which the objecting Party believes are contrary to the terms of this Agreement, not to permit litigation over the Settlement Administrator's determination of the validity of individual Claims, except insofar as the determination is impacted by the practice or procedure to which the Party objects.  Upon request, the Settlement Administrator shall give Class Counsel and Defendants copies of submitted Claim Forms.  Claim Forms submitted by the Class Representatives will not be rejected as invalid.

48.     A claim submitted by a person on the Mailing Lists shall be accepted as valid only if the Claim Form reflects that the claimant was represented in the subject transaction by a Broker Defendant and that the subject property was used by the claimant as (a) a principal residence (including individual units of condominiums or cooperatives), (b) a vacation home, or (c) rental property having 1-4 housing units, one of which was occupied by the claimant (whether or not the claimant also checks the box stating that the property was his or her principal residence).   Notwithstanding anything in the prior sentence, a claim shall be denied if the Claim Form reflects that the property sold in the subject transaction was rental property of more than four housing units (whether or not the claimant occupied one of the units), commercial property, agricultural property (unless the claimant also checks the box stating that they lived at the property, whether or not the claimant also checks the box stating that the property was his or her principal

- 25 -

residence), vacant land or more than 25 acres.

49.     A claim submitted by a person who is not on the Mailing List shall be accepted as valid only if (a) the Publication Claim Form reflects the street address of the subject property that was sold, that the claimant was represented in the subject transaction by a Broker Defendant, the name of a real estate agent or agents that represented the claimant in the subject transaction (although this information will not be verified by the Settlement Administrator), the city in which that agent's office was located (and, as to the Pickford Settlement Class, the name of the street on which the office was located, which shall be verified by the Settlement Administrator using a comprehensive list of offices owned by the Pickford Defendants during the Pickford Class period, such list to be provided by the Pickford Defendants), and that the subject property was used by the claimant as (i) a principal residence (including individual units of condominiums or cooperatives), (ii) a vacation home, or (iii) rental property having 1-4 housing units, one of which was occupied by the claimant (whether or not the claimant also checks the box stating that the property was his or her principal residence), (b) the First American records reflect that a first mortgage loan to the buyer was recorded in connection with the transaction (as set forth in Paragraph 44, above), and (c) the claimant affirms and provides documentation, as set forth in Paragraphs 40 and 43, above, that he or she paid for a Property ID Natural Hazard Disclosure Report.  Notwithstanding anything in the prior sentence, a claim shall be denied if the Claim Form reflects that the property sold in the subject transaction was rental property of more than four housing units (whether or not the claimant occupied one of the units), commercial property, agricultural property (unless the claimant also checks the box stating that they lived at the property, whether or

- 26 -

not the claimant also checks the box stating that the property was his or her principal residence), vacant land or more than 25 acres.

50.     As to each Claim that the Settlement Administrator determines is timely and valid, the Settlement Class Member shall be entitled to receive a payment (the "Claim Payment"), as follows:  (1) if the amount paid for the Property I.D. NHD Report in question appears in the Property I.D. records submitted to the Settlement Administrator, the amount that Property I.D.'s records show the Final Settlement Class Member paid for the Property I.D. NHD Report; (2) if the amount paid for the Property I.D. NHD Report in question does not appear in Property I.D.'s records, and the documentation submitted by the Final Settlement Class Member shows the amount paid (*e.g.*, a HUD-1 Settlement Statement), the amount shown on such documentation; or (3) if the amount paid cannot be determined based on (1) or (2) above, then $99.

51.     As to each Settlement Class, if the amounts deposited by Defendants into the Settlement Account pursuant to Paragraphs 16-20 are insufficient to pay in full the valid Claims submitted by Final Settlement Class Members, the amount paid to each Final Settlement Class Member shall be reduced pro rata.

52.     As soon as practicable following the making of the deposits set forth in Paragraph 19, the Settlement Administrator shall distribute the Claim Payments by check made payable to the Final Settlement Class Members entitled to receive the Claim Payments and delivered by U.S. Mail, postage prepaid to the address listed on the Final Settlement Class Member's Claim Form.  The checks shall be valid for 90 days from date of issue.  As to any checks returned as undeliverable, the Settlement Administrator shall attempt to update the address of the Final Settlement Class Member, and, if a new

- 27 -

address is found, re-mail the check to the Final Settlement Class Member.

**G.    <u>Administrative Expenses of Settlement</u>.**

53.     The costs of (a) the publication of the Publication Notice, (b) the printing and mailing of the Preliminary Class Notice (including the cost of generating a mailing list), (c) receiving and processing requests for Claim Forms, (d) mailing and emailing Claim Forms, (e) receiving, processing, and determining the validity of submitted Claim Forms, (f) printing and mailing checks in payment of valid Claims, (g) establishing and maintaining the toll-free telephone number and Settlement Website, (h) providing the Accounting and Final Accounting, and (i) any other reasonable costs of class notice and settlement administration (collectively, "Class Administration Expenses") shall be paid from the Settlement Account.   The Settlement Administrator shall promptly issue funds from the Settlement Account to pay the Class Administration Expenses.  The Settling Parties shall bear all other costs and expenses (*e.g.*, Class Counsel's costs, except to the extent such costs are recovered as part of the Attorneys' Fee Award) that each of them may incur in connection with the approval and implementation of this Agreement.

54.     The Class Administration Expenses shall be allocated among the Settlement Classes as follows:  (a) Realogy Settlement Class, 82%; (b) Pickford Settlement Class, 13%; and (c) RE/MAX Settlement Class, 5%.

55.     If (a) this Agreement is terminated in accordance with its terms, or is not approved by the courts, (b) the Preliminary Class Settlement Notice and Claim Forms have been mailed to the persons appearing on the Mailing Lists, and (c) the parties are unable to reach a new Agreement within 60 days after the date of termination, then (d) the Settlement Administrator shall provide notice (by U.S. Mail or email, if requested by

- 28 -

the Final Settlement Class Member) of such termination to the Final Settlement Class

Members appearing on the Mailing Lists, and all other persons who have requested a

Preliminary Class Settlement Notice or registered to receive a Claim Form, in such form

as shall be directed by the Court.  The cost of providing such notice ("Termination

Expenses") shall be paid by Defendants as set forth herein.

**H.**     **Releases.**

        56.     Upon the Effective Date, the Class Representatives and the Final

Settlement Class Members, on behalf of themselves and their respective former and

present agents, attorneys, employees, directors, officers, shareholders, members, parents,

subsidiaries, affiliates, heirs, executors, administrators, successors, predecessors and

assigns and all other affiliated or related entities and corporations, and all other

representatives, do hereby RELEASE AND FOREVER DISCHARGE Defendants and

all of Defendants' former and present agents, attorneys, employees, insurers, independent

contractors, directors, officers, shareholders, members, franchisees, parents, subsidiaries,

affiliates (including, without limitation, Valley of California, Inc.), successors,

predecessors and assigns and all other unincorporated, affiliated or related entities and

corporations, and all other representatives, from any and all claims (including but not

limited to claims under RESPA, the UCL, or any other federal or state statutes or

regulations), demands, losses, costs, causes of actions, debts, obligations, liabilities, or

petitions of any kind, claims for damages, liquidated damages, punitive damages or

exemplary damages, equitable relief, costs, expenses and attorneys' fees, which now exist

or which may exist in the future WHETHER PRESENTLY KNOWN OR UNKNOWN

in connection with, related to or arising out of (a) any of the facts, transactions or conduct

- 29 -

alleged in the Class Action Lawsuit, (b) the order or purchase of Property I.D. NHD Reports, (c) the ABAs formed by Defendants, or any other matter concerning or arising out of the relationships between Defendants, or (d) any matter that was alleged or that could have been alleged in the Class Action Lawsuit, arising out of the matters alleged (the "Settlement Classes' Release"). Claims that Final Settlement Class Members may have arising from any errors or omissions in any Property I.D. NHD report or other Property I.D. report shall not be released.

57.     In connection with the Settlement Classes' Release, the Final Settlement Class Members specifically waive the benefit of the provisions of California Civil Code § 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

58.     This Settlement Classes' Release is effective and binding upon all Final Settlement Class Members, and a Final Settlement Class Member is bound by the Settlement Classes' Release whether or not that Final Settlement Class Member timely returns a valid and properly-executed Claim Form. The remedies set forth in this Agreement shall be the Final Settlement Class Members' sole and exclusive remedies for all claims within the scope of the Settlement Classes' Release.

59.     Upon the Effective Date, Defendants do hereby RELEASE AND FOREVER DISCHARGE the Class Representatives and their attorneys (including, but not limited to Class Counsel) from any and all claims, demands, losses, costs, causes of actions, debts, obligations, liabilities, or petitions of any kind, claims for damages, liquidated damages, punitive damages or exemplary damages, equitable relief, costs,

expenses and attorneys' fees, which now exist or which may exist in the future

WHETHER PRESENTLY KNOWN OR UNKNOWN in connection with, related to or

arising out of (a) the investigation, initiation, prosecution, or settlement of the Class

Action Lawsuit, or (b) any communications with actual or prospective class

representatives or class members (including, without limitation, actual or prospective

members of the Settlement Classes), the media, or the general public concerning the

Class Action Lawsuit.

60.     In connection with Defendants' Release, Defendants specifically waive

the benefit of the provisions of California Civil Code § 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not
> know or suspect to exist in his or her favor at the time of executing the
> release, which if known by him or her must have materially affected his or
> her settlement with the debtor.

**I.      Non-Admission of Liability.**

61.     The Settling Parties understand and agree that the execution of this

Agreement and the consideration described herein are in settlement and compromise of

disputed claims.  Nothing in this Agreement shall be construed as an admission of

liability or an admission that any of the facts alleged in the Class Action Lawsuit are true

or actionable, nor shall this Agreement create any new or additional obligations on the

part of Defendants or otherwise be binding except as expressly stated herein.

**J.      Class Counsel Attorneys' Fees and Costs.**

62.     For Class Counsel's attorneys' fees and costs in the Class Action Lawsuit,

Class Counsel shall receive a payment from the Settlement Account in an amount to be

determined by the Court, not to exceed 25% of the Total Consideration made available to

each of the Settlement Classes (the "Attorneys' Fee Award"), to be paid by the

Settlement Administrator from the Settlement Account within five (5) business days following entry by the Court of an order making the award.

63.     Notwithstanding any other provision of this Agreement, (a) Class Counsel shall have sole responsibility to prepare and file a fee petition to the Court seeking the Attorneys' Fee Award, to which Defendants shall not object; (b) the final amount of the Attorneys' Fee Award will be decided by the Court; (c) Class Counsel will accept the Court's award of the Attorneys' Fee Award as full payment of attorneys fees and costs under this Agreement; (d) Defendants shall not be liable to pay Class Counsel any attorneys fees or costs apart from the Attorneys' Fee Award; and (e) the binding effect and implementation of the terms of this Agreement are not contingent in any way upon the Court's award of the Attorneys' Fee Award or the amount of any such award.  Class Counsel may also apply to the Court to make incentive awards to the Class Representatives (the "Incentive Awards"), to which Defendants shall not object, provided that the sum of the Attorneys' Fee Award and Incentive Awards does not exceed the limits set forth in this paragraph.  Notwithstanding the foregoing, the Property I.D. Defendants shall have the right to respond to any incorrect factual assertions contained in Class Counsel's fee petition concerning the Property I.D. Defendants or their representation by Resch Polster & Berger LLP.

**K.      Modification or Termination of this Agreement.**

64.     The terms and provisions of this Agreement may be amended, modified or expanded by agreement of Class Counsel and counsel for Defendants, with approval of the Court.

65.     This Agreement will terminate at the sole option and discretion of

- 32 -

Defendants or the Class Representatives if (a) the Court or any appellate court rejects, modifies or denies approval of any portion of this Agreement that the terminating party reasonably determines is material, (b) the Court or any appellate court does not enter or completely affirm, or alters or amends, any portion of the Final Order and Judgment that the terminating party reasonably determines is material, or (c) as provided in Paragraph 31.  The terminating party must exercise its right to withdraw from and terminate this Agreement, as provided in this subsection, by submitting to the other Settling Parties a written notice of termination no later than ten days after receiving notice of the event prompting the termination, in the case of (a) and (b), and five days after receiving notice of the event prompting the termination, in the case of (c).

      66.     Notwithstanding the preceding paragraph, if (a) the settlement between the Realogy Defendants, Property I.D. Corporation, Property I.D. of California, Inc., Property I.D. California, LLC, Property I.D. Affiliates 1, LLC d/b/a Property I.D. USA, Property I.D. Associates, LLC,, and the Realogy Settlement Class, or (b) the settlement between the Pickford Defendants, Property I.D. Corporation, Property I.D. Golden State, LLC, and the Pickford Settlement Class, or (c) the settlement between the RE/MAX Defendants, Property I.D. Corporation, Disclosure Services, LLC, and the RE/MAX Settlement Class, is not granted final approval or is overturned on appeal as provided in the preceding paragraph, it shall not affect the validity of the other settlement(s), which shall not be subject to termination on that ground, and which shall remain in full force and effect as between the parties thereto.

      67.     Notwithstanding Paragraph 65, neither the Settlement Classes nor Class Counsel may terminate this Agreement solely because the amount of the Attorneys' Fee

- 33 -

Payment awarded by the Court to Class Counsel is claimed to be inadequate.

68.     If this Agreement is terminated in accordance with the terms of the

Agreement, or if the Agreement is not approved by the courts:

a.      This Agreement shall be null and void and shall have no force or effect, and no party to this Agreement shall be bound by any of its terms, except for the terms of this paragraph;

b.      This Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of Defendants and the Settlement Classes, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

c.      Defendants retain all defenses, arguments and motions as to all claims that have been or might later be asserted in the Class Action Lawsuit, including (without limitation) lack of standing, any applicable statutes of limitation and arguments that no plaintiff class can properly be certified in the Class Action Lawsuit, and nothing in this Agreement shall be raised by the Class Representatives or Class Counsel or construed to defeat or limit any defenses, arguments, or motions asserted by Defendants. Neither this Agreement, nor the fact of its having been made, nor any Exhibit or other document prepared in connection with this Agreement shall be admissible or entered into evidence over the objection of Defendants in the Class Action Lawsuit or any other action or proceeding for any purpose whatsoever; and

d.      The Settlement Administrator shall return to Defendants any amounts deposited into the Settlement Account, including any interest earned thereon, less any Class Administration Expenses already incurred and any Termination Expenses in the following proportions:  with respect to the Realogy Settlement Class, 60% to the Property I.D. Defendants and 40% to the Realogy Defendants; with respect to the Re/Max Settlement Class, 44.8% to the Property I.D. Defendants and 55.2% to the Re/Max Defendants; and with respect to the Pickford Settlement Class, 51% to the Property I.D. Defendants and 49% to the Pickford Defendants.

**L.      General Provisions.**

69.     If any Settlement Class Member appeals the Final Judgment, the rights

and duties set forth in this Agreement shall be suspended pending the resolution of such

- 34 -

767358.10

appeal unless otherwise agreed or provided herein, or the appellate court then having jurisdiction otherwise orders.

70.     The Settling Parties authorize their respective counsel to take all appropriate action reasonably required or permitted pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement.  The Settling Parties and their respective counsel shall cooperate with each other in good faith to effect the approval and the implementation of the Agreement.

71.     The terms of this Agreement include the terms set forth in each Exhibit attached to this Agreement by reference as though fully set forth in this Agreement.  All Exhibits to this Agreement are an integral part of this Agreement.

72.     This Agreement, including the Exhibits, sets forth the entire agreement among the Settling Parties with respect to its subject matter.  The Settling Parties expressly acknowledge that no other agreements, arrangements or understandings not expressed in this Agreement exist among or between them.  This Agreement may not be altered or modified except by written instrument executed by Class Counsel and counsel for Defendants, with approval of the Court.

73.     This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

74.     The Court shall retain continuing jurisdiction over the Class Action Lawsuit until the settlement contemplated in this Agreement is completed, and thereafter for the enforcement, interpretation, and construction of this Agreement.  Any disputes concerning the interpretation or application of the terms of this Agreement shall be

referred to the mediator, the Hon. William J. Cahill (Ret.), for attempted resolution by mediation.

75.     The Settling Parties agree that (a) this Agreement was negotiated and drafted by Class Counsel and Defendants' counsel at arm's length, (b) no parol or other evidence may be offered to explain, construe, contradict or clarify the terms of this Agreement, the intent of any party or their counsel, or the circumstances under which the Agreement was negotiated or executed, and (c) Class Counsel and Defendants' counsel contributed to the drafting of this Agreement and this Agreement shall not be construed against or in favor of the Class Representatives or Defendants on account of the authorship of this Agreement.

76.     In no event shall this Agreement, any of its provisions, any evidence of its negotiation, or any court proceedings relating to this Agreement be construed as, offered as, received as, used as or deemed to be an admission, concession, waiver, or evidence of any kind in the Class Action Lawsuit, any judicial, administrative, regulatory or other proceeding between Defendants and any Settlement Class Member, except in a proceeding to enforce this Agreement.

77.     This Agreement shall be binding upon, and inure to the benefit of, the respective executors, administrators, successors, and assigns of (a) the Class Representatives, (b) the Settlement Class Members, and (c) Defendants.

78.     This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

IN WITNESS WHEREOF, each of the Settling Parties has duly executed this

Agreement as of the date(s) set forth below:

Dated: August 7, 2008          LIEFF, CABRASER, HEIMANN &
                                    BERNSTEIN, LLP


                               By: _____
                                    Barry R. Himmelstein
                                    Class Counsel

Dated: August 4, 2008

PROPERTY I.D. CORPORATION;
PROPERTY I.D. OF CALIFORNIA, INC.;
PROPERTY I.D. CALIFORNIA, LLC;
PROPERTY I.D. AFFILIATES 1, LLC
  D/B/A PROPERTY I.D. USA;
PROPERTY I.D. ASSOCIATES, LLC;
DISCLOSURE SERVICES, LLC; and
PROPERTY I.D. GOLDEN STATE, LLC

By: _____

Its: _____

(SUBJECT TO EXECUTION OF
AGREEMENT BETWEEN PROPERTY I.D.
CORP. AND ITS INSURANCE CARRIERS,
WRITTEN CONFIRMATION OF WHICH
WILL BE PROVIDED TO PLAINTIFFS NO
LATER THAN AUGUST 14, 2008)

767358.10

Dated:  August $\underline{4}$ , 2008

HOMESERVICES OF CALIFORNIA, INC.
and PICKFORD GOLDEN STATE
MEMBER, LLC

By: _____
     Dana D. Strandmo

Its:  Secretary

and

PICKFORD REALTY, LTD.

By: PICKFORD REAL ESTATE, INC.
Its:  General Partner

By: _____
     Dana D. Strandmo

Its:  Secretary

By: _____
     Samuel H. Kraemer

Its:  Assistant Secretary

(SUBJECT TO APPROVAL BY THE
BOARD OF DIRECTORS, WRITTEN
CONFIRMATION OF WHICH WILL BE
PROVIDED TO PLAINTIFFS NO LATER
THAN AUGUST 15, 2008)

- 40 -

Dated: August __4__, 2008

                       HOMESERVICES OF CALIFORNIA, INC.
                       and PICKFORD GOLDEN STATE
                       MEMBER, LLC

                       By: _____
                             Dana D. Strandmo

                       Its:  Secretary

                       and

                       PICKFORD REALTY, LTD.

                       By: PICKFORD REAL ESTATE, INC.
                       Its:  General Partner

                       By: _____
                             Dana D. Strandmo

                       Its:  Secretary

                       By: _____
                             Samuel H. Kraemer

                       Its:  Assistant Secretary

                       (SUBJECT TO APPROVAL BY THE
                       BOARD OF DIRECTORS, WRITTEN
                       CONFIRMATION OF WHICH WILL BE
                       PROVIDED TO PLAINTIFFS NO LATER
                       THAN AUGUST 15, 2008)

- 40 -

Dated: August 4, 2008

ROCH ENTERPRISES, INC., FORMERLY
KNOWN AS RE/MAX OF CALIFORNIA &
HAWAII, INC. and RAS FINANCIAL
SERVICES, INC.

By: _____

Stephen A. Haselton

Its:  President

42

Dated: August 5, 2008

COLDWELL BANKER RESIDENTIAL
BROKERAGE COMPANY, CENTURY 21
REAL ESTATE CORPORATION,
COLDWELL BANKER RESIDENTIAL
BROKERAGE CORPORATION,
COLDWELL BANKER REAL ESTATE
CORPORATION, REALOGY
CORPORATION, REALOGY SERVICES
GROUP LLC, ERA FRANCHISE
SYSTEMS, INC., NRT INCORPORATED,
CENDANT REAL ESTATE SERVICES
GROUP, LLC and CENDANT
OPERATIONS, INC.

By: _____

    Dea Benson

Its: Senior Vice President

and

CENDANT CORPORATION

By: _____

Its: _____

- 42 -

Dated:  August __, 2008

COLDWELL BANKER RESIDENTIAL
BROKERAGE COMPANY, CENTURY 21
REAL ESTATE CORPORATION,
COLDWELL BANKER RESIDENTIAL
BROKERAGE CORPORATION,
COLDWELL BANKER REAL ESTATE
CORPORATION, REALOGY
CORPORATION, REALOGY SERVICES
GROUP LLC, ERA FRANCHISE
SYSTEMS, INC., NRT INCORPORATED,
CENDANT REAL ESTATE SERVICES
GROUP, LLC and CENDANT
OPERATIONS, INC.

By:  _____
 Dea Benson

Its:  Senior Vice President

and

CENDANT CORPORATION

By:  _____

Its:  _Senior Vice President & Secretary_

- 42 -

1

___ Priority
___ Send
___ Clsd
✓ Enter
JS-5/JS-6
JS-2/JS-3

1   Barry R. Himmelstein (State Bar No. 157736)
    email: bhimmelstein@lchb.com

2   Robert J. Nelson (State Bar No. 132797)
    email: rnelson@lchb.com

3   LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP

4   275 Battery Street, 30th Floor
    San Francisco, CA 94111-3339

5   Telephone: (415) 956-1000
    Facsimile: (415) 956-1008

6

7   *Class Counsel*

FILED
CLERK, U.S. DISTRICT COURT

JAN 28 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

8           UNITED STATES DISTRICT COURT

9         WESTERN DISTRICT OF CALIFORNIA

10                WESTERN DIVISION

11   MARK and RACHELLE BERGER,          No. CV 05-5373-GHK (CWx)
     et al., on behalf of themselves and all
12   persons similarly situated,        **[PROPOSED] FINAL ORDER AND
                                        JUDGMENT GRANTING MOTION
13                Plaintiffs,           FOR FINAL APPROVAL OF
                                        PROPOSED CLASS ACTION
14   v.                                 SETTLEMENTS**

15   PROPERTY I.D. CORPORATION,         DATE: January 26, 2009
     et al.,                            TIME: 9:30 a.m.
16                                      COURTROOM: 650
                  Defendants.           JUDGE: Hon. George H. King
17

18                                      Discovery Cutoff: May 9, 2008
                                        Pretrial: Not Set
19                                      Trial: Not Set

20

21

22

23

24

25

26

27

28

1    Plaintiffs[1] have submitted for the Court's consideration a proposed

2    Settlement Agreement resolving this class action lawsuit against four sets of

3    defendants:  (a) the Property I.D. Defendants;[2] (b) the Realogy Defendants;[3] (c) the

4    Pickford Defendants;[4] and (d) the Re/Max Defendants[5] (collectively,

5    "Defendants").  Plaintiffs' Motion for Final Approval of Proposed Class Action

6    Settlements came on for hearing on January 26, 2009 at 9:30 a.m.  Having reviewed

7    the Settlement Agreement, the motion, and based on the Court's extensive

8    familiarity with this litigation, the Court now FINDS, CONCLUDES, ORDERS,

9    ADJUDGES, AND DECREES as follows:

10          1.      Plaintiffs, Defendants, and the members of the Realogy Class, the

11   Pickford Class, and the Re/Max Class (as defined in the Court's April 28, 2008

12   Order Re:  Plaintiffs' Motion for Class Certification (Dkt. No. 829), as amended by

13   the Court's August 29, 2008 Order re: Plaintiffs' Motion for Preliminary Approval

14   of Proposed Class Action Settlements (Dkt. No. 873)) who have not timely

15   excluded themselves from such class (collectively, the "Classes") have submitted

16   themselves to the jurisdiction of the Court for purposes of the proposed settlements,

17   and the Court has subject matter jurisdiction to approve the Settlement Agreement.

18          2.      The Court confirms its findings that the Classes satisfy the

---

[1] Joseph Chenier, Jr., Gil Lee, Jeanne Bakale Aldrich, Michael Attar, Ulysses J. Harvey, and Mark and Rachelle Berger.

[2] Property I.D. Corporation; Property I.D. of California, Inc.; Property I.D. California, LLC; Property I.D. Affiliates 1, LLC d/b/a Property I.D. USA; Property I.D. Associates, LLC; Disclosure Services, LLC; and Property I.D. Golden State, LLC.

[3] Cendant Corporation, Coldwell Banker Residential Brokerage Company, Century 21 Real Estate Corporation, Coldwell Banker Residential Brokerage Corporation, Coldwell Banker Real Estate Corporation, Realogy Corporation, Realogy Services Group LLC, ERA Franchise Systems, Inc., NRT Incorporated, Cendant Real Estate Services Group, LLC and Cendant Operations, Inc.

[4] HomeServices of California, Inc.; Pickford Realty, Ltd.; and Pickford Golden State Member, LLC.

[5] ROCH Enterprises, Inc., f/k/a RE/MAX of California & Hawaii, Inc. and RAS Financial Services, Inc.

1  requirements for a class action under Rules 23(a) and 23(b)(3) of the Federal Rules

2  of Civil Procedure.

3        3.    The notice of the proposed settlements provided to the Classes satisfies

4  the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and

5  the requirements of due process.

6        4.    The Settlement Agreement and its terms constitutes a fair, reasonable,

7  and adequate settlement as to each of the Classes, and the Court directs that the

8  settlements be consummated according to the terms of the Settlement Agreement.

9        5.    Each member of any of the Classes who has not timely excluded

10  themselves from such Class is bound by the terms of the Settlement Agreement,

11  including the Settlement Classes' Release set forth in Paragraph 56 thereof.

12        6.    This action is dismissed with prejudice as to Defendants, without

13  attorneys' fees or costs except as provided in the Settlement Agreement.

14        7.    The Court shall retain jurisdiction to enforce the Settlement Agreement

15  until performance in full of its terms, including the administration and distribution

16  of the funds deposited into the Settlement Account, as defined therein.

17

18      IT IS SO ORDERED, ADJUDGED, AND DECREED.

19

20  Dated: ___1/26___, 2009

21                             _____

22                             Hon. George H. King
                           United States District Judge

23

24

25

26

27

28

793351.1                      - 3 -             ORDER GRANTING FINAL APPROVAL
                                        OF PROPOSED CLASS ACTION SETTLEMENTS
                                        CV  05-5373-GHK (CWx)